Alex Straus (SBN 321366)
alex@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
Telephone: (310) 450-9689
Facsimile: (310) 496-3176

*Plaintiff's Attorney*
*Additional Plaintiff's Attorneys on signature page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SPIVEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>DIAMOND PET FOODS, INC.<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff Mark Spivey ("Plaintiff"), acting on behalf of himself and all others similarly situated ("Class Members"), bring this action for damages and equitable relief against Diamond Pet Foods, Inc ("Defendant").

### NATURE OF THE CASE

1.     Defendant designed, manufactured, distributed, marketed, and sold Taste of the Wild High Prairie Canine Recipe with Roasted Bison & Roasted Venison Dry Dog Food ("Taste of the Wild Dog Food").

2.     Many dogs suffer allergic reactions to foods containing grains including corn and/or are on a grain free diet. Therefore, having these ingredients omitted from

their pet foods is an important characteristic to consumers, including Plaintiff and Class Members.

3.      In fact, consumers pay a premium for Taste of the Wild Dog Food because it is specifically represented to be "a grain free diet" formulated for the health or nutritional needs of their dogs, and consistent with certain ingredient, quality, and manufacturing standards.

4.   However, independent testing of Taste of the Wild Dog Food confirms that these representations are false. Taste of the Wild Dog Food contains significant amounts of grain. These independent testing results are attached hereto as Exhibit A.

5.   Plaintiff brings this suit on behalf of himself and similarly situated consumers who purchased Taste of the Wild Dog Food. Plaintiff and Class members were damaged because they would not have purchased (or would not have paid a premium) for Defendant's dog food had they known the true facts regarding the ingredients.

## PARTIES

6.   Plaintiff Mark Spivey is a citizen of California residing in Mission Viejo. Plaintiff Spivey purchased Taste of the Wild Dog Food on numerous occasions.

7.      Defendant Diamond Pet Foods, Inc. is a for-profit corporation, organized and existing under the laws of the State of Missouri. Defendant has its principal office in Meta, Missouri. Defendant designs, manufactures, and markets Taste of the Wild Dog Food and sells it through third-party retailers such as Petco, Walmart, and Chewy.com throughout the United States.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

9.      Defendant has sufficient minimum contacts with California to be subject to this Court's personal jurisdiction.  Defendants intentionally avail themselves of the markets within California through the promotion, sale, marketing, and distribution of Taste of the Wild Dog Food and numerous other products, which renders this Court's exercise of jurisdiction necessary and proper.

10.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Plaintiff Spivey resides in this District.

## FACTUAL ALLEGATIONS

### *Defendant's "A Grain Free Diet" Representation*

11.     Prior to approximately February 2020, Taste of the Wild Dog Food specifically represented that it was grain free and suitable for "A Grain Free Diet."[1] *See* Figure 1 below.

---

[1] *See Taste of the Wild High Prairie Grain-Free Dry Dog Food*, CHEWY, https://www.chewy.com/taste-wild-high-prairie-grain-free/dp/181320 (last visited Feb. 6, 2020).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Figure 1*

12.     Mislabeling in the pet food industry is a well-known and widespread problem.[2]

13.     In the Summer of 2019, Plaintiff's counsel hired an expert to test whether Defendant accurately represented the contents of Taste of the Wild Dog Food.

---

[2] *See, e.g. infra* ¶ 32 ("By 2018, research into pet food products' label claims and the presence of non-conforming ingredients intensified. Out of the 40 products analyzed in one study, the ingredients of only 10 products correctly matched their label.")

14.     The results from this test revealed that the Taste of the Wild Dog Food contained significant amount of grain and that Defendant misleadingly advertised its grain content.

15.     Shortly thereafter, Plaintiff's counsel on behalf of consumers including Plaintiff sent Defendant a demand letter outlining Defendant's misconduct and notifying Defendant that it had misrepresented the grain content. Defendant received this letter on August 19, 2019.

16.     On August 28, 2019, Plaintiff's counsel received a response from Defendant's chief legal counsel stating that Defendant denies that its product "contains meaningful quantities of any of the alleged ingredients" and that Defendant does "not put anything in the food that is not identified on the label."

17.     In approximately February of 2020, Defendant modified its Taste of the Wild Dog Food product labels to remove grain-free and grain-free diet representations (the "Initial Label Change").[3] *See* Figure 2 below.

---

[3] *See High Prairie Canine Recipe with Roasted Bison & Roasted Venison*, TASTE OF THE WILD, https://www.tasteofthewildpetfood.com/dog-formulas/high-prairie-canine-formula-with-bison-and-roasted-venison/ (last visited Feb. 6, 2020).



*Figure 2*

18.     Further investigation revealed that Defendant also added a disclaimer on its website stating: "*The facility in which this food is made also makes food that may contain other ingredients, such as grains. Trace amounts of these other ingredients may be present."[4]

---

[4] *See Formula Finder,* TASTE OF THE WILD, https://www.tasteofthewildpetfood.com/formula-finder/formula-results/?pet_type=Dog&category%5B%5D=Dry+Grain-Free (last visited Feb. 6, 2020).

19.     While Defendant was changing its labels, Plaintiff's counsel continued their investigation into Defendant's products by testing another recipe.  These testing results showed that the additional recipe also contained significant amounts of grain.

20.     Plaintiff's counsel sent Defendant a second demand letter outlining Defendant's misconduct and notifying Defendant that it had misrepresented the grain content for both the additional recipe as well as the recipe that is the subject of this complaint.  Defendant received this letter on March 2, 2020.

21.     Later in 2020, Defendant instituted a second label change (the "Second Label Change").

22.     Defendant's newest label returns the prominent grain-free language from the original label but adds the same disclaimer from Defendant's website: "*The facility in which this food is made also makes food that may contain other ingredients, such as grains. Trace amounts of these other ingredients may be present."[5] *See* Figure 3 below.

---

[5] *See High Prairie Canine Recipe with Roasted Bison & Roasted Venison*, TASTE OF THE WILD, https://www.tasteofthewildpetfood.com/taste-of-the-wild/grain-free/dog-formulas/high-prairie-canine-recipe-with-bison-and-roasted-venison/ (last visited July 14, 2020).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Figure 3*

23.    Independent testing of Taste of the Wild Dog Food confirms that it contains significant – not *trace* – amounts of grain.

24.    This suit seeks to remedy the wrongs for Plaintiff and Class Members who were deceived by Defendant's material misrepresentations and omissions prior to the Initial Label Change (i.e., before Defendant introduced the disclaimer onto its website and labels).

25.    Reasonably relying on Defendant's material misrepresentations and omissions, Plaintiff and Class Members paid a significant price premium to obtain the

benefits of a "grain-free" product: a 28-pound bag of Taste of the Wild Dog Food retails for $48.99[6] while a 32-pound bag of Purina "Dog Chow Complete Adult with Real Chicken Dry Dog Food[,]" is only $33.99.[7]   However, Plaintiff and the Class Members did not receive a "grain-free" product because Defendant misrepresented the ingredients of Taste of the Wild Dog Food to extract a price premium from unsuspecting consumers.

### *Defendant's Misrepresentations and Omissions are Material to Consumers*

26.     Pet foods vary in their quality of ingredients, formula, manufacturing processes, and inspection quality. Pet owners who purchase "grain-free" products pay a premium in order to alleviate their pets' allergies and to provide various health and nutritional benefits associated with a grain-free diet. Notably, grain allergies are more common among certain dog breeds than others.

27.     In addition, pet owners are willing to pay a premium for dog food with premium ingredients and reasonably expect the product to conform to the ingredients as listed by the manufacturer on its packaging.

28.     Accordingly, Defendant's misrepresentations and omissions regarding the grain content (i.e. claiming to be "grain-free") in Taste of the Wild Dog Food are material to consumers.

### *Academic Research Confirms Pet Food Manufacturers*
### *Sell Non-Conforming Products*

29.     Before December 2014, little or no peer-reviewed academic research was published concerning the accuracy of label claims with respect to ingredients present in canine foods.

---

[6] *See Taste of the Wild High Prairie Grain-Free Dry Dog Food*, CHEWY, https://www.chewy.com/taste-wild-high-prairie-grain-free/dp/181320?utm_source=google product&utm_medium=cpc&utm_campaign=f&utm_content=Taste%20of%20the%20Wild&utm_term=&gclid=Cj0KCQjw753rBRCVARIsANe3o44uNcO7_cfxkPcPSMlZpsgBR2kufSZZvOpVT GYLkxR1BR_gSBQ0_ukaAl-7EALw_wcB (last visited Feb. 18, 2020).

[7] *See Dog Chow Complete Adult with Real Chicken Dry Dog Food,* CHEWY, https://www.chewy.com/dog-chow-complete-adult-real-chicken/dp/127736 (last visited Feb.  18, 2020).

30.     In December 2014, a group of researchers found that only 18% of the pet food samples they tested completely matched the label claims with respect to the content of animal by-products. Thus, 82% of the products analyzed by the researchers contained non-conforming ingredients when compared to their label claims. The December 2014 study hypothesized that raw materials used in the preparation of the canned food products contained multiple protein types and may have contributed to contamination.[8]

31.     In 2016, another study investigated the issue of whether vegan pet food contained non-conforming mammalian ingredients.[9] Vegan pet foods should contain no mammalian proteins or ingredients. The study found that half of the products tested contained non-conforming mammalian DNA in the products and suggested that manufacturers are ultimately responsible for maintaining adequate end product quality control to prevent such discrepancies between their ingredients and label claims.

32.     By 2018, research into pet food products' label claims and the presence of non-conforming ingredients intensified. Out of the 40 products analyzed in one study, the ingredients of only 10 products correctly matched their label.[10] Of the remaining 30 products, 5 did not contain the declared animal species ingredients and 23 others revealed the presence of undeclared animal species. Two of the products' labels were vague and their accuracy was indeterminable. This 2018 study found that mislabeling was an especially widespread problem in pet foods used for "elimination

---

[8] *See* Ming-Kun Hsieh, *et al.*, *Detection of undeclared animal by-products in commercial canine canned foods: Comparative analyses by ELISA and PCR-RFLP coupled with slab gel electrophoresis or capillary gel electrophoresis*, J Sci Food Agric. 2016 Mar 30; 96(5):1659-65 (completed December 31, 2014).

[9] *See* K. Kanakubo, *et al.*, *Determination of mammalian deoxyribonucleic acid (DNA) in commercial vegetarian and vegan diets for dogs and cats*, Journal of Animal Physiology & Animal Nutrition, 2017 Feb;101 (1):70–74 (March 3, 2016).

[10] *See* Rebecca Ricci, *et al.*, *Undeclared animal species in dry and wet novel and hydrolyzed protein diets for dogs and cats detected by microarray analysis,* BMC Veterinary Research volume 14, Article number: 209 (2018).

diets" (i.e. used to investigate food allergies). In this 2018 study, researchers suggested that manufacturers should pay particular attention to both the selection of raw material suppliers and the production processes for pet food due to the high risk of contamination.

33.    A second 2018 study (conducted in Europe) tested 11 canine and feline limited ingredient wet food products and found the presence of non-conforming ingredients in 54% of the products.[11] This study further suggested other peer-reviewed studies found that 80% of the dry foods analyzed contained non-conforming products and that the high rate of cross-contamination in dietic limited-antigen wet canine and feline foods may be due to inadequate quality-control practices in the pet food industry. The authors opined that the pet food industry has a legal obligation to produce safe food for consumers. The researchers hypothesized that pet food contamination occurs at two different points during manufacturing: 1) in the production of the feed materials (sometimes attributable to suppliers), and 2) during the actual production of the pet food via cross-contamination during manufacturing production lines, improper equipment cleaning, or other production deficiencies.

34.    In 2018, a third study summarized 18 studies, articles, and an abstract published between July 2017 and January 2018 related to pet food ingredient testing.[12] The authors concluded that the mislabeling of pet food appears rather "common" in the limited ingredient diet products that are proposed for elimination diets. They also found that unexpected added ingredients are more frequently detected than those missing from the label.

35.    Since 2014, virtually all scholarly researchers have found that pet food sold to consumers frequently contains non-conforming ingredients, and significant

---

[11] *See* Elena Pagani, *et al.*, *Cross-contamination in canine and feline dietetic limited-antigen wet diets*, BMC Vet Res. 2018; 14: 283 (September 12, 2018).

[12] *See* Thierry Olivry and Ralf S. Mueller, *Critically Appraised topic on adverse food reactions of companion animals (5): discrepancies between ingredients and labeling in commercial pet foods*, BMC Vet Res. 2018 Jan 22;14(1):24 (January 22, 2018).

discrepancies between pet food products' labeling and their actual ingredients appears to be commonplace among pet food manufacturers.

### *Plaintiff's Experiences with Taste of the Wild Dog Food*

36.    Plaintiff Mark Spivey is a resident and citizen of Mission Viejo, California who purchased Taste of the Wild Dog Food on a monthly basis starting in 2014 and fed it to his dog Bodie. Plaintiff has records of purchasing a 30 lb. bag of Taste of the Wild Dog Food from Chewy.com on March 9, 2019 for $52.49. Plaintiff has records of purchasing a 28 lb. bag of Taste of the Wild Dog Food from Chewy.com on April 4, 2019 and March 20, 2019 for $48.99.

37.    Prior to purchasing Taste of the Wild Dog Food, Plaintiff read Defendant's representation that the product was "Grain-Free" on the product's packaging and website and specifically relied on this representation in deciding to purchase Taste of the Wild Dog Food. Plaintiff's dog, Bodie, has allergies that the veterinarian could not precisely diagnose.

38.    Plaintiff researched the benefits of a grain-free diet and learned that eliminating grains could help Bodie's allergy symptoms. In order to figure out what Bodie was allergic to, Plaintiff wanted to try eliminating grains from Bodie's diet. Plaintiff Spivey spent a premium price to purchase Taste of the Wild Dog Food due to its grain-free claims, but stopped purchasing Taste of the Wild Dog Food in May 2019 because Bodie's allergy symptoms did not improve.

39.    Plaintiff would not have purchased the Taste of the Wild Dog Food if he had been aware that its "grain free" representations were not true, or alternatively, he would have paid less for this dog food. If the Taste of the Wild Dog Food were actually grain free, he would consider buying it in the future.

## **CLASS ACTION ALLEGATIONS**

40.    Plaintiff brings this action on behalf of himself and a class ("Nationwide Class" or "Class") defined as follows:

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased Taste of the Wild Dog Food prior to the Initial Label Change primarily for personal, family or household purposes, and not for resale.

41.　Plaintiff Mark Spivey further brings this action on behalf of himself and the members of the following subclass ("California Subclass"):

> All persons residing in California who, during the maximum period of time permitted by law, purchased Taste of the Wild Dog Food prior to the Initial Label Change primarily for personal, family or household purposes, and not for resale.

42.　Plaintiff reserves the right to amend the Class definition or Subclass definitions at a later date as necessary to conform with facts learned through discovery.

43.　Specifically excluded from the Class and Subclass definitions are (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

44.　As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including each named Plaintiff.

45.　Plaintiff seeks only damages and equitable relief on behalf of himself and the Class Members. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by himself and/or the Class Members.

46.　<u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class

Members in a single action will provide substantial benefits to all parties and to the Court.

47.    <u>Typicality</u>: The claims of the representative Plaintiff is typical in that Plaintiff, like all Class Members, purchased Taste of the Wild Dog Food that was manufactured and distributed by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, he purchased a product that contained grain that was marketed and advertised not to contain grain. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to Plaintiff and all Class Members.

48.    <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

    a.  Whether Taste of the Wild Dog Food contains grain;

    b.  Whether Defendant's "A Grain Free Diet" representation is false and/or misleading;

    c.  Whether Defendant knowingly or negligently omitted that the products contained grain and were not suitable for a grain free diet;

    d.  Whether Defendant expressly warranted that the Taste of the Wild Dog Food would conform to its limited ingredient representations including that the products were grain free and suitable for "A Grain Free Diet";

    e.  Whether Defendant impliedly warranted that the Taste of the Wild Dog Food would conform to its limited ingredient representations including that the products were grain free and suitable for "A Grain Free Diet";

    f.  Whether Defendant breached its express and implied warranties by making the representation above when the products contained grain;

g.  Whether Defendant was unjustly enriched by consumers paying a price premium for grain free products which were not grain free;

h.  Whether Defendant's actions as described above violated the various state consumer protection laws as alleged herein;

i.  Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above described practices.

49.  <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

50.  <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

# CAUSES OF ACTION

## COUNT I

## BREACH OF EXPRESS WARRANTY

### (On Behalf of The Nationwide Class)

51.     Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

52.     Defendant sold and Plaintiff and Class Members purchased Taste of the Wild Dog Food.

53.     Defendant represented in its marketing, advertising, and promotion of Taste of the Wild Dog Food that the product was "grain-free" and suitable for "A Grain-Free Diet."

54.     Defendant made such representations to induce Plaintiff and Class Members to purchase its food.

55.     The representations that the Taste of the Wild Dog Food was "grain-free" was a part of the basis of the bargain between Defendant and Plaintiff.

56.     Taste of the Wild Dog Food did not conform to Defendant's representations and warranties because it contained grain.

57.     Within a reasonable time after Plaintiff and other similarly situated consumers knew or should have known of such failure to conform, Plaintiff's counsel sent two demand letters to Defendant, which was received by Defendant on August 19, 2019 and March 2, 2020, respectively (as described above in Paragraphs 15 and 20). The demand letters outlined Defendant's misconduct, including that Defendant misrepresented the contents of Taste of the Wild Dog Food regarding its grain composition. Such conduct constitutes a breach of Defendant's express warranty.

58.     As a direct and proximate result of Defendant's breaches of its express warranty and failure of Defendant's dog food to conform to its representations as warranted, Plaintiff and Class Members have been damaged in that they did not receive the product as specifically warranted and/or would not have purchased (or paid a premium) for Defendant's dog food that did not conform to Defendant's warranties.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(Plaintiff individually and on Behalf of the Nationwide Class)**

59.   Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

60.   Defendant sold and Plaintiff and Class members purchased Taste of the Wild Dog Food.

61.   When sold by Defendant, Taste of the Wild Dog Food was not merchantable, did not pass without objection in the trade under the label description, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on its container or label.

62.   Within a reasonable time after Plaintiff and other similarly situated consumers knew or should have known of such failure to conform, Plaintiff's counsel sent two demand letters to Defendant, which were received by Defendant on August 19, 2019 and March 2, 2020 respectively (as described above in Paragraphs 15 and 20). The demand letters outlined Defendant's misconduct, including that Defendant misrepresented the contents of Taste of the Wild Dog Food regarding its grain composition. Such conduct constitutes a breach of Defendant's implied warranty.

63.   Because the products contain grain, they were neither grain-free nor fit for "A Grain-Free Diet."

64.   As a direct result of the Taste of the Wild Dog Food being unfit for its intended purpose and/or otherwise not merchantable, Plaintiff and Class members were damaged because they would not have purchased (or paid a premium) for Defendant's dog food had they known the true facts regarding the ingredients.

## COUNT III

## UNJUST ENRICHMENT[13]

**(Plaintiff individually, and on Behalf of the Nationwide Class)**

---

[13] Plaintiff brings this claim in the alternative to the breach of contract claims.

65.    Plaintiff brings this count on behalf of himself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

66.    Plaintiff and Class Members conferred benefits on Defendant by purchasing Taste of the Wild Dog Food at a premium price.

67.    Defendant has knowledge of such benefits.

68.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members purchasing Taste of the Wild Dog Food. Defendant retaining this money under these circumstances is unjust and inequitable because Defendant falsely and misleadingly omitted that the products contained grain and represented that its food contained no grain and was suitable for "A Grain-Free Diet" when, in fact, Taste of the Wild Dog Food contains grain. Such omissions and misrepresentations caused injuries to Plaintiff and Class Members because they would not have purchased (or paid a premium) for Defendant's dog food had they known the true facts regarding the ingredients.

69.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for unjust enrichment, as ordered by the Court.

## COUNT IV

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (Plaintiff individually and on Behalf of the California Subclass)

70.    Plaintiff Spivey brings this Count on behalf of himself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

71.    Defendant is subject to the Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair

competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

72.     Defendant violated the "unlawful" prong of the UCL by violating California's False Advertising Law ("FAL") as described in Count V, below.

73.     Defendant violated the "unlawful" prong of the UCL by violating California's Consumers Legal Remedies Act ("CLRA") as described in Count VI, below.

74.     Defendant's conduct, described herein, violated the "unfair" prong of the UCL because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

75.     Defendant's conduct with respect to the labeling, advertising, and sale of the Product was unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the CLRA, the FAL, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

76.     Defendant's conduct with respect to the labeling, advertising, and sale of the Product was unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

77.     Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL.

78.     A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set forth herein, Defendant's claims relating grain content stated on the Products' labeling were false and likely to mislead or deceive the public.

79.     Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Taste of the Wild Dog Food to unwary consumers.

80.     Defendant's conduct caused substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct. Plaintiff and California Subclass Members were damaged because they would not have purchased (or paid a premium) for Defendant's dog food had they known the true facts regarding the ingredients.

81.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order requiring Defendant to commence a corrective advertising campaign.

82.     Plaintiff and the California Subclass also seek an order for and restitution of all monies from the sale of the Product, which were unjustly acquired through acts of unlawful competition.

**COUNT V**

**CALIFORNIA FALSE ADVERTISING LAW**

**Cal. Bus. & Prof. Code § 17500 ("FAL")**

**(Plaintiff individually and on Behalf of The California Subclass)**

83.     Plaintiff Spivey brings this Count on behalf of himself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

84.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

85.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

86.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the ingredient supply, product manufacturing, and oversight of its dog food misled consumers acting reasonably, as stated above.

87.     Plaintiff and California Subclass Members suffered injuries in fact as a result of Defendant's actions as set forth herein because they purchased the Defendant's food in reliance on Defendant's false and misleading labeling claims concerning, among other things, the products' quality, ingredient supply, and product manufacturing and oversight, as stated above.

88.     Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

89.     Defendant profited from its sale of the falsely and deceptively advertised dog food to unwary consumers.

90.     As a result, Plaintiff and the California Subclass are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

91.     Plaintiff and the California Subclass were damaged because they would not have purchased (or paid a premium) for Defendant's dog food had they known the true facts regarding the ingredients.

**COUNT VI**

**CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

**Cal. Civ. Code § 1750, *et seq.* ("CLRA")**

**(Plaintiff individually, and on behalf of the California Subclass)**

92.     Plaintiff Spivey brings this Count on behalf of himself and the California Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

93.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of Taste of the Wild Dog Food for personal, family, or household purposes by Plaintiff and California Subclass Members, and violated the following sections of the CLRA:

       a.  § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

       b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

       c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised;

       d.  § 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and

       e.  § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

94.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

95.     Defendant's wrongful business practices constituted a course of conduct in violation of the CLRA.

96.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff sent letters to Defendant (as described above) providing notice to Defendant of the alleged violations of the CLRA and demanding that Defendant correct such violations, thereby providing Defendant an opportunity to correct its business practices.

97.     Plaintiff and the California Subclass were damaged because they would not have purchased (or paid a premium) for Defendant's dog food had they known the true facts regarding the ingredients.

98.     Pursuant to California Civil Code § 1780, Plaintiff seeks monetary relief, including restitution and actual damages, reasonable attorney fees and costs, and any other relief that the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class members;

b.  For an order declaring that Defendant's conduct violated the statutes referenced herein;

c.  For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief; and

g.  For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 18, 2020                  Respectfully submitted,

*/s/ Alex Straus*
Alex Straus (SBN 321366)
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436

1

Telephone: (310) 450-9689
Facsimile: (310) 496-3176
2

alex@gregcolemanlaw.com
3

Charles E. Schaffer*
4

David C. Magagna Jr.*
5

**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
6

Philadelphia, PA 19106
7

Tel: (215) 592-1500
cschaffer@lfsblaw.com
8

dmagagna@lfsblaw.com
9

10

Jonathan Shub*
Kevin Laukaitis*
11

**SHUB LAW FIRM, LLC**
12

134 Kings Hwy. E., 2nd Floor
Haddonfield, NJ 08033
13

Tel: 856-772-7200
14

jshub@shublawyers.com
15

klaukaitis@shublawyers.com
16

Gary E. Mason*
17

Danielle L. Perry, CA Bar No. 292120
18

**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
19

Washington, DC 20016
20

gmason@masonllp.com
dperry@masonllp.com
21

22

Lisa A. White*
William A. Ladnier, CA Bar No. 330334
23

**GREG COLEMAN LAW PC**
24

First Tennessee Plaza
800 S. Gay Street, Suite 1100
25

Knoxville, TN 37929
26

Tel: 865-247-0080
Fax: 865-522-0049
27

lisa@gregcolemanlaw.com
28

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER L.P.A**.
4445 Lake Forest Drive, Suite 490
Cincinnati, OH  45242
Tel: 513-345-8291
jgoldenberg@gs-legal.com

Philip Friedman*
**FRIEDMAN LAW OFFICES**
2001 L Street NW, Suite 400
Washington, DC 20036
Tel: 202-293-4175
psf@consumerlawhelp.com

J. Hunter Bryson*
**WHITFIELD BRYSON, LLP**
641 S St. NW
Washington, DC 20001
T: 919-539-2708
hunter@whitfieldbryson.com

* *Pro Hac Vice to be filed*

**Attorneys for Plaintiff and the Class**

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Alex Straus, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at Greg Coleman Law PC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California. I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Los Angeles, Los Angeles County, California this 18th day of September, 2020.

*/s/ Alex Straus*
Alex Straus
Alex Straus (SBN 321366)
alex@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
Telephone: (310) 450-9689
Facsimile: (310) 496-3176